The next case is Virginia Griggs v. Leonard Griggs. And Mr. Grininger? Yes. And when you're ready, please proceed. You may please report. This is a case that cries out for statistics. The parties were divorced in 1975, at which time the husband was on active duty in the United States Air Force making approximately $2,700 a month. Now, that amount is derived from the pay chart, which was submitted as an exhibit, exhibit number three, at the time of trial in this matter. And the $2,700 a month in 1975, in accordance with the Consumer Price Index, is worth $11,103 a month today in 2011, or I should say in 2011 at the time of trial in this matter. That becomes the standard of living that was achieved during the marriage, the fact that they were making the equivalent of $11,103 in 2011 money. And coincidentally, that's almost to the dollar what the husband is making now. He's now receiving three separate pensions associated with his previous employment, not only including retired military pay, but also retired pay associated with him being the president of Lambert International Airport and his Social Security. And those three equal about $11,100 a month. In this particular case, at the time of the divorce in 1975, you have to take yourself back to that time period. My client, the wife, the ex-wife, was a 40-year-old woman with a high school education, very little work experience. She had stayed home and taken care of the kids during the course of the marriage, and she is thrown into the work environment. Based on that, she then—and I detailed this in my brief—she went through one job after another after another as far as the type of work that she performed after the time of the divorce and worked up until the year 2000, at which time her physical problems then began to take over. She was unable to be employable at that point. But going back to 1975, we're looking at the difficulties of a 40-year-old woman with a high school education, very little work experience, trying to get a job and trying to support herself in addition to the $650 a month that she was receiving at that point from the maintenance award that was agreed to at the time of the divorce in 1975. And one of the things that the husband pointed out in his argument in this matter is that, well, maybe she didn't do enough to try to become gainfully employed. And I detailed her work history, how she held several jobs, one of them for a significant period of time in her later years, seven years, I believe it was, from 1993 to 2000. And one of the things he's complaining about and the court relied upon as a basis for saying that he's not going to increase the amount of maintenance is that she hasn't necessarily done enough to become gainfully employed. Take that in light of the fact that the husband, who remarried two years after the divorce in 1977, his current wife stopped working in 1992, eight years before the ex-wife, my client in this particular case, stopped working. So he's begrudging the wife for not working long enough for enough periods of time when yet his current wife quit work eight years earlier. And she did not have any physical problems at that point in time. With respect to looking at the factors that the court is supposed to consider at the time of the modification action, you'll look at 504A and Section 510 of the IMDMA. Interestingly enough, both of those sections simply state that the court is supposed to consider a number of factors but doesn't really tie any of them in particular to amount versus duration. And in this particular case, I believe the court relied too much on an issue that really affects duration as opposed to amount. And that was one of the things the court looked at and was argued by the husband in this case is he's been paying maintenance for 35 years. And while that factor is more significant with respect to duration than amount, it was used as part of the basis for saying I'm not going to increase the amount of maintenance in this particular matter. Some of the factors are more significant with respect to amount than the length of time that the payor has been paying maintenance. And I think one of them is the income, assets, expenses, and debts of the parties at the time of the divorce versus the income, assets, expenses, and debts of the parties at the time of the modification petition, which was in 2011, last year. And when you look at the income of $2,700 in 1975 and compare that to the $11,100, which is now, then what you're looking at is an equal amount as far as what the husband is making. In other words, he's making about the same amount dollar-wise and currently in 2011 than he was back in 75. Well, using the Consumer Price Index then, the $650 that was ordered in 1975 as an agreed order is worth about 20 – I put the number in the brief that I wrote. It's worth about the $2,600 that I put as far as in today's money. And if you use that as a litmus test, that would be, I think, a good starting point for purposes of deciding the appropriate amount of maintenance in this matter. Here we're talking about a situation, and one of the tied-in factors to that is the wife's shown needs and the wife's expenses associated with what she has in the way of assets, expenses, debts. And when you tie that in, is there but any question but that the wife's standard of living has greatly decreased since the time of the divorce? And I went through a number of things that she can't even, for example, buy a new hearing aid. Her wheelchair is falling apart. If it weren't for the fact that she had inherited money from her father's death and her mother's death in 1997 and 1999, she wouldn't have been able to even make significant payments on the mortgage on her house. And that's the only real asset that she has. If you look at the financial statement that was filed in this matter, she has no other assets of any significance. Compare that to the husband's financial statement and his income. He has, and I put this in the brief, he has about $4,600, $4,700 left over after paying all of the household expenses for both he and his current wife. Wife has no money left over. In fact, she's going deeper in debt. With each month that goes by, she has a number of debts that are shown on her financial statement. In addition, her grown daughter has been paying sums of money in order to keep her afloat and has come down and taken care of buying food for her, taking her – driving her around because she doesn't have a car, and she doesn't have the money to buy a car. Her grown daughter has had to help her under these circumstances. And I think when the court looks at those things, I think in this particular case, there was an abuse of discretion on the part of the judge in deciding not to grant any increase, particularly when you look at the destitution that the wife has now incurred with respect to the husband's circumstances. One of the cases that sheds some light on the issue of the military pension, and I want to talk about that for just a moment, is a case called Smith. And in the case of In re Merit of Smith, which was handed down just around the time of the judgment of dissolution – in fact, it is a 1981 1st District case – says that at that time – this is before the passage of the Uniformed Services Former Spouses Protection Act – that case says that the wife cannot be awarded outright a share of the military retired pay because it was a federal pension and state courts don't have the authority to divide it. And Janice, the wife in the Smith case, it was inappropriate for the court to award her a share of the military pension. And the court said, and you don't need to anyway because the unallocated support to include maintenance was her proportionate share of the military pension. The court's taking that into consideration in deciding how much to award. And in this particular case, the wife was not awarded a share of the military retired pay, just like in Smith. And I submit that the $650 that the wife was awarded in maintenance was meant to include something associated with the share of the military retired pay because it was unawardable at that point in time. When did he start receiving his military pension? Two years later when he retired in 1977, so within two years after the divorce. And that brings up a correlated issue, and that is we're talking about a situation where the husband had been on active duty for 21 years, and he was a colonel at the time of the divorce. He retired as a colonel in 06. He was not promoted beyond the time after the judgment of disillusionment was entered. And when you look to the fact that the Smith case says you're supposed to take that into consideration, the dollar amount the wife would have received, which I'm not saying necessarily that it's a dollar-for-dollar correlation, and I don't think Smith says that either. It just says the court is supposed to take that into consideration. One of the things I introduced into evidence is what the wife would have received if she had been awarded a proportionate share of 50% of the meritorious portion of the military retired pay. And that would have amounted to about $1,750 a month, far above $1,750 a month in today's money based on what he's receiving currently, far above the $650, once again, that the court left intact. So I submit that for a number of reasons that the court should have increased it based on inflation, based on what she would have received as a share of the military retired pay. Both of those are way above the $650 mark that we're talking about. And when you get into the qualitative difference between the husband's standard of living now and the wife's standard of living, I went through and itemized some of the husband's expenses, and they are far and away extravagant compared to what the wife spends. And there's no point in me reiterating that. I put that in the brief so that you'd get a feel, a flavor for what it is that we're talking about as far as his standard of living today versus hers. And that was part of what was argued at the time of trial in this matter. One of the things that the husband talks about is what about his health? He's getting old, and he's getting up there in years too. And I don't know if I mentioned this, but my client is 77 at the time of this hearing, and he's 80. And his health is bad too. Well, but that doesn't affect, unlike her health, which affects her needs, his health doesn't affect his ability to generate income because it's all retired pay. He's not going to work. His health isn't preventing him from receiving $1 of money because it's all in the form of retirement, Social Security, military retirement, and retirement as president of Lambert International Airport. So, I mean, I submit this issue is a red herring on their part, on the part of the husband to try to deflect what the real issue is. And the question about, well, but he may have some future medical needs, well, that's all speculative. And I think the case law says that the court's determination is not supposed to be based on pure speculation as to what may be accrued in the future on the part of the husband as far as expenses that he might have associated with medical needs. And this is the backdrop of the fact that he's a military retiree and all his medical expenses are paid for by the government. He can go to a military base and get free medical care at any point in time. Lastly, we're asking that this court not only increase the amount of maintenance awarded based on the reasonable shown needs and an abuse of discretion by the trial court in this matter, but also that it be made retroactive to June of 2010 when we filed the petition in this matter. This case has been – we initially filed the petition coming up on about 20 months ago. Turning to the life insurance for just a minute. The life insurance – Could I be on the pension before you get to the life insurance? The pension from Lambert and the Social Security, would that have all been earned after the marriage was dissolved? That portion of the Social Security, obviously you pay into Social Security and you get some money back. Military pay into the Social Security too? He had 20 years in the military. Yes. Yeah, they paid Social Security. So he would have had a portion of that. A portion of that would have been attributable to the Social Security that he's now receiving. Obviously the stuff – the portions that he paid after 1975 were not. As far as the Lambert, that's all after the time of the divorce. How does that affect the determination or increase in maintenance or do you believe it does? The fact that it was all earned after the – Well, keep in mind he was on active duty and drawing full colonel's pay at the time of the divorce. He retires. His income goes down. It's 2.5 percent per year. He's drawn about 70 – no, less than that. It would be about 40 – no, about 57 percent of what he was making as a colonel on active duty as soon as he retires. Because it's 2.5 percent per year. He retired 23 years. So even though he now has this new job where he's receiving full pay, his military pay has dropped because of the fact that he's now retired. So I submit that there should be something attributable for what he was working full time when he was on active duty obviously. So yeah, but yes, to answer your question, yes, all of that that he worked at after the time of the divorce, that was Lambert International Airport. But the case law also speaks to the issue of, well, part of what you look at as far as future income, and that's why I cited the other case, the – I'm sorry. The O'Brien case is part of that you look at is also based on his ability to pay. That is one of the other factors under the statute, and yes, it's expected anytime you're going to modify that the person is going to have pay increases. It's associated with new employment. So you don't necessarily write that part out of the statute. That is a factor that the court can and should consider in this case. On rebuttal, you can talk about the life insurance. Okay, thank you. And it's Ms. – Miske. Miske, okay. When you're ready, would you please proceed? Thank you. May it please the Court, Mr. Gruninger. This case is simply about the fact that the wife is not happy with how her life turned out. She sees what her life could have been if she had remained married to Leonard Briggs, and she's hoping to get that kind of lifestyle reestablished for herself. But she chose to divorce him 35 years ago, and now she's asking that the court give her everything that she got in the divorce plus everything that she would have if she was married to him now. Mr. Gruninger focused on the husband's military retirement and notes that the divorce did predate the time at which she would have been entitled to receive an abortion pursuant to the divorce. But then he takes into consideration the Smith case, which I find to be distinguishable in this circumstance. Smith was timely appealed after the divorce, and it was also within the timeframe of consideration of the passage of the Uniformed Services Former Spouses Protection Act, which did create a time period in which someone such as Mrs. Briggs could have come back to court and asked for a modification at that time. And the Banna case that I cited did indicate that the IMDA was modified pursuant to Section 510.1, which was repealed on January 1st, 1989, at which time Mrs. Briggs' right to seek any portion of the military retirement would have terminated. She did not come back to court to modify her maintenance pursuant to the argument of military retirement until 2010, long after she would have had any right to seek modification pursuant to the military retirement. She also relies on the Consumer Price Index. However, the cost of living has affected both of the parties here, and so that cannot be the sole basis for modification of maintenance. It does not necessarily equate into just an increase for Mrs. Briggs in terms of her maintenance. Looking at the statutory factors, the divorce decree indicates that Mrs. Briggs received a good portion of the marital property. She was allowed to take Lincoln Automobile, free and clear of any debt, any household furnishings she chose to take, all of the U.S. savings bonds of the parties. My client also paid $5,000 from the inheritance he received from his mother, all transportation and moving expenses for Mrs. Briggs to move down to Florida, all of Mrs. Briggs' attorney's fees and costs in the original divorce, and he was left to care for all of the expenses of the children who were left in his care after the divorce. Mr. Briggs also provided Mrs. Briggs with her education, which she chose to pursue in the field of computers. Yet Mrs. Briggs wants us to believe that she could not obtain any job outside of the food service industry, which has prevented her from becoming self-supporting. My client is 80 years old, and he is suffering from serious medical conditions. In fact, during these proceedings, he did have to undergo cervical spine surgery, which put him in a rehabilitation facility because the prosthesis in his shoulder failed. He's facing degenerative osteoarthritis, lumbar spinal stenosis, which are going to create significant costs for him going forward in terms of possible home health care, possible additional surgeries and rehabilitative care, and possible nursing home care. The case that I cited, More Me More, allows the court and requires the court to consider those speculative expenses. In that case, it was the anticipated retirement of the husband, and the court said, the husband's about to be 65 years old, and we consider that as something that we can take into consideration, though speculative. Therefore, I believe that it was proper for the court to consider my client's medical condition at the time of the hearing. In terms of the duration of payments, it is true my client has been paying maintenance for 35 years, and while the maintenance provision is a permanent maintenance award, it does need to be taken into consideration that not only has he been paying for so long, but the parties were only married for 20 years. It's coming up on my client paying maintenance for almost twice as long as the parties were married, which I think is a significant factor under 504 and 510 of the IMDMA. It is also relevant to consider the fact that my client continued to work for a significant period after the parties were divorced, continued to advance himself and advance his career, and establish a lifestyle going forward that would allow him to support himself in his elderly age as he is doing now. As far as the life insurance, the divorce decree does not make any reference to any policies or the amounts thereof that were in effect at the time of the divorce. Mrs. Briggs submitted two letters to the trial court in terms of trying to articulate what policies were in effect and the values thereof. However, the first letter that she referenced, which is included in Mr. Gruninger's brief, is not signed and makes no reference to who drafted the letter. My client indicated he did not recall writing the letter and that at no time did he have $180,000 in life insurance policies. Were the policies term policies? Yes. So is it your position that he would be required by the court's order to go out and procure new term policies whenever the old term policies expired? No, I believe that the understanding was that as being term policies by their own terms, they would expire or decrease in value as time went on. And at this point, it seems that an 80-year-old man with significant medical conditions such as Mr. Griggs has, the cost for obtaining any value of policy in excess of what is currently in place would be astronomical if not even impossible to obtain. Mrs. Briggs also relied on the second letter that my client did sign, which he acknowledges, but she tries to connect the two letters because the second letter makes no reference again to the amounts or any policies in effect at that time. She also relies on the fact that the second letter references these policies and tries to line up the two letters and say that must refer back to the policies indicated in the first letter. My client today admits that there are multiple policies in effect which benefit the wife. That's what these policies are. So there's no way to really know what the policies were. There's nothing in the record that's going to show, identify a policy by its number? Not at the time of divorce, no. In terms of, I think I've addressed the issue of requiring my client to obtain additional policies at this point. It is unclear whether that's even possible, but it also has not been shown that he willfully terminated any of these policies. Again, being termed policies, they were going to decrease in value and or expire on her face. He did not take any positive actions to remove Mrs. Briggs as a beneficiary from any policy or terminate the rights thereof. As far as attorney's fees are concerned, Mrs. Briggs went into this case knowing that attorney's fees were primarily her responsibility and that the possibility of success was unclear in terms of a final resolution. She did not present any credible evidence to support any of her positions or as to, again, what the identity of the wife insurance policies were or that there was willful termination. She did not present any documentation to show the attorney's fees incurred, and my client did request that she be denied her request for attorney's fees. My client has also incurred significant attorney's fees in having to defend against this action almost four decades after the parties were divorced. I ask that the court take into consideration Cotton v. Cotton, which says that the court must consider who brought these proceedings and how they were brought about and determine whether to award attorney's fees. In conclusion, I would respectfully request that this honorable court find that Judge Kelly adequately and properly considered the applicable statutes, case law, evidence, and testimony presented and affirm him on all issues. Thank you. Thank you. Any rebuttal? Thank you, Your Honor. With respect to the wife insurance, the letters, I think, were the smoking gun in this particular case. There was no financial statements that were filed at the time of the judgment of disillusion. The judgment did not specifically list what the policies were, but even Mr. Griggs admitted that he said he thought she knew what the policies were. The two letters cite incidents that surrounded the time of the divorce. It specifically refers to what had just happened at the time of the divorce. But what do you think is required by that court order? Is he supposed to go out and get new term insurances? Yes. Insurance policies? Yes. Absolutely, I think that. And the reason is the Kite case. The Kite case is a late 1960s case which focuses on what was of principal importance to the parties. First of all, with respect to the life insurance, it's non-modifiable property. It's not in support of maintenance because the case law that I put in the brief says maintenance terminates upon death. So why would you have life insurance to support it? So I submit that the life insurance is non-modifiable property, and as a result, that means that the husband was responsible for what was the dollar amount that was in the policies. What were the terms of the life insurance policies that were in effect at the time of the dissolution? They were – there was the four policies in effect. A couple of them were degenerating policies. They decrease in value over time. And this is another key point is three of the four terminated as soon as he leaves active duty. Well, everybody knew he was going to retire at the time of the divorce. They knew he was going to leave active duty sometime, and yes, two years later he retires. Those are no longer available to him. As soon as he leaves active duty, those policies, he's not eligible for them anymore. He has to convert it to serviceman's good life. So she was only going to gain if he died within those next two years. Well, that's their argument. My argument is that the Kike case says the wife cares about the life insurance policy values, not the policies themselves. She doesn't care what policies they are. She's focusing on the dollar amount that she's going to get. And that's where the letters come into play. That's why the letters are so important. Does the dissolution say to maintain the policies that are in effect at the time of the dissolution? Or the value of the policy? It's a 75-degree, very vague. All it says is defendants shall pay the premium for and keep in full force in effect all the insurance contracts and policies, which he now has on his life, and plaintiffs shall remain there on his primary beneficiary. The language in Kike, though, focuses on the dollar amounts. And it says that's what's important to the parties. And that's why the dollar amounts are more significant than necessarily what the policies are. But the dissolution refers to the insurance contracts in effect at that time. It does. I don't deny that. But I'm just saying that the Kike case kind of steers you in another direction. And the Sneader case that I also quoted says that if you can't make loans against the policies, insurers can't let them terminate on their own accord. And I submit that why would you be allowed to let the policies lapse or degenerate in value if you can't even make loans against them, like the Sneader case says? One of the things that counsel just argued is the cost of life insurance would be astronomical. Well, now, wait a minute. Either he has an obligation under the judgment of dissolution to maintain the policies or he doesn't. And the fact that he failed to maintain those isn't the wife's fault. The fact that they might be astronomical in value, there is some remedy the court could fashion with respect to that. We're asking for the $130,000, $180,000 if you consider double indemnity. We're asking for that as the value of the policies. And one of the things that counsel just argued is, going back to the maintenance for a second, is that this was based solely on cost of living increases. We're not asking for modification maintenance based solely on cost of living increases. We're also saying she doesn't have any assets. She's loose. She's racked up all the debt she can possibly. Her daughter is helping her. There's a lot more here than just cost of living increases. That's the starting point. That's the litmus test from which the trial court should have started. And we're saying that the court abuses discretion by not granting $1 increase from 1975 values with respect to that. And going back to the life insurance for just – I'm sorry, I keep flip-flopping here, but he couldn't – the key is with respect to those life insurance policies that he had, totaling $180,000 in double indemnity, $130,000 in face value, and I'm talking term life insurance now. One of the things that made the parties believe that I think is telling with respect to this is that everybody knew. Everybody knew he was going to be retiring from the military in short order when he had been on active duty for 21 years, was a colonel, and had just about gone as far as he could and, in fact, retires within two years, remarries, et cetera, et cetera. When you say everyone knew, was there anything in place or what indications other than most military people do that? Unfortunately, this is a bare-bones judgment of disillusion from 1975. Obviously, I was a teenager at the time, so I don't know what their thinking was other than that. No, I just was curious as to whether or not he had initiated plans to pursue another career or something along those lines. Not until he couldn't have retired more than 18 months out, so it would have been sometime after the judgment of disillusion, shortly after that he could have put in his retirement paperwork, and he did. He retired within two years of the judgment of disillusion, acquired a new wife, et cetera, et cetera. But the key with the life insurance is the fact that that – We're not real crazy about that language. Acquired a new wife. I'm sorry. I didn't know what you called it. He remarried. I am. But then the question becomes is the expenses and the life insurance for the new wife more important than his ex-wife? Thank you. Thank you both for your arguments today and your briefs. We'll get you an order as early as possible. Thank you.